# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN SERV. & PRODUCT, INC., and WARREN INGRAM, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 10 C 7055 ) |
| AETNA HEALTH INS. CO. | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Before the court is defendant Aetna Health Insurance Company's ("Aetna") motion to dismiss the complaint filed by plaintiffs American Service Product, Inc. ("ASAP") and Warren Ingram. For the reasons explained below we grant Aetna's motion in part and deny it in part.

## BACKGROUND

In April 2005, Ingram was prescribed medication to treat his hemophilia. (Compl. ¶ 16; see also Fax from Gilbert Russell to Aetna Claims Department, dated Mar. 26, 2009, attached as Ex. A to Compl., at 3 (invoice showing dates of service in April 2005).) ASAP, a pharmacy, filled his prescriptions. (Id. at ¶¶ 13, 16-17.) The complaint alleges that Ingram was covered by medical insurance through his employer, Air Tran. (Id. at ¶ 16.) Under Air Tran's prescription drug benefit plan (the "Plan"), which defendant Aetna

administers, the Plan covers 20% of a participant's eligible prescription drug costs. (Id. at ¶ 11.)  Medicare covers the other 80%.  (Id.)  Plaintiffs allege that Ingram assigned his right to recover Plan benefits to ASAP, citing documents that Ingram evidently signed when he received his prescriptions.  (Id. at ¶ 24; see also id. at Ex. D (documents signed by Ingram purporting to authorize ASAP to submit claims information on his behalf and collect benefit payments).  On March 26, 2009, ASAP faxed an invoice dated January 11, 2006 to Aetna's claims department.  (See Fax from Gilbert Russell to Aetna Claims Department, dated Mar. 26, 2009, at 3.)[1]  The invoice shows a "Balance Due" of $36,925.56, which plaintiffs allege is the amount Aetna owed under the Plan, plus interest.  (Id.; see also Compl. ¶ 15.)  Plaintiffs allege that on some unspecified date an Aetna representative "confirmed . . . that ASAP will be paid under the Plan 20% of the cost with Medicare paying 80% of the cost."  (Compl. ¶ 18.)  They further allege that Aetna ultimately "den[ied] payment to ASAP under the Plan."  (Id. at ¶ 5.)

Plaintiffs attach a letter to their complaint in which Aetna "explained" its decision in vague and conclusory terms.  (See Letter from Aetna to ASAP, attached as Ex. C to Compl. (stating

---

[1] A letter included in ASAP's March 26, 2009 fax suggests that this was not the first time ASAP had submitted this claim, but neither the letter nor the complaint indicates when ASAP originally submitted it.  (See Fax from Gilbert Russell to Aetna Claims Department, dated Mar. 26, 2009, at 2.)

that Aetna had denied benefits "according to the plan contract").) Plaintiffs separately allege that Aetna refused to provide unspecified "Plan information." (Id. at ¶ 25.) In support of this allegation they cite documents signed by Ingram that purport to authorize ASAP to submit claim information to third parties "for the purpose of obtaining payment." (Id. at Ex. D.) These documents cannot reasonably be construed as requests for information from Aetna about the Plan. Plaintiffs do allege, however, that ASAP made separate, oral requests for "Plan information." (Id. at ¶ 25.)

Plaintiffs complaint asserts ERISA claims for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B) (Count I), and statutory damages under 29 U.S.C. § 1132(c)(1) for failing to provide plan information required by 29 U.S.C. § 1024(b)(4) (Count II). Plaintiffs also claim that Aetna is estopped from denying coverage (Count III). Aetna has moved to dismiss all three counts.

## DISCUSSION

### A. Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**B. Plaintiffs' Claim for Unpaid Benefits (Count I)**

Under ERISA, a plan participant or beneficiary may file a civil suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs allege that Aetna, as the Plan's administrator, "exercises [] discretionary authority or control respecting the management and administration of disposition of assets of the Plan." (Compl. ¶ 11.) Consequently, we review Aetna's decision to deny plaintiffs' claims using the "highly deferential arbitrary and capricious standard." Williams v. Aetna Life Ins. Co., 509 F.3d 317, 321 (7th Cir. 2007). Applying that standard, we "will uphold the Plan's determination as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is

based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." Id. at 322 (citation and internal quotation marks omitted).

Plaintiffs' complaint could be clearer, but we think they have sufficiently alleged that Ingram's medication was covered by the Plan and that either ASAP or Ingram is entitled to payment. (See Compl. ¶ 35.) Whether Exhibit D is a "valid assignment," (Def.'s Mem. at 10), is a question of fact that we will not resolve on a motion to dismiss. See Northwest Diversified, Inc. v. Desai, 818 N.E.2d 753, 761 (Ill. App. Ct. 2004) ("The creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances.") (citation and internal quotation marks omitted). For now, ASAP and Ingram are permitted to state their claims for relief in the alternative. (See Compl. ¶¶ 1-2, 34.) Aetna argues that plaintiffs' complaint "pleads no facts concerning the reasons Aetna provided for its denial." (Def.'s Mem. at 4; see also Def.'s Reply at 2-3.) On the contrary, plaintiffs attach a letter to their complaint in which an Aetna representative denied ASAP's petition in a conclusory fashion. See Williams, 509 F.3d at 321 ("[A] denial of benefits will not be upheld 'when there is an

absence of reasoning in the record to support it.'") (quoting Hackett v. Xerox Corp. Long-Term Disab. Income, 315 F.3d 771, 774-75 (7th Cir. 2003)). Aetna's real objection seems to be that plaintiffs' complaint does not tell the whole story. If so, Aetna can supply the missing details in its answer. Aetna's motion to dismiss Count I is denied.

**C. Plaintiffs' Claim for Statutory Damages Based on Aetna's Alleged Failure to Provide "Plan Documents" (Count II)**

ERISA authorizes us to impose statutory penalties against any plan administrator that "fails or refuses to comply with a request for information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . ." 29 U.S.C. § 1132(c)(1). We may, in our discretion, award the participant or beneficiary "up to $100 a day from the date of such failure or refusal," and such other relief "as [we] deem[] proper." Id. Section 1024(b)(4) requires the administrator, "upon written request of any participant or beneficiary," to "furnish a copy of the last updated summary [] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. §1024(b)(4) (emphasis added). As Aetna points out, the phrase "Plan information" (Compl. ¶ 25) is vague and encompasses information not specifically identified in § 1024(b)(4). Plaintiffs should clarify what information they requested and indicate whether they made their request in writing.

Their insistence that Exhibit D is a written request for Plan information from Aetna is baffling. (See supra; see also Pls.' Resp. at ¶¶ 8-10; Compl. ¶¶ 25, 41.) In their response to Aetna's motion to dismiss plaintiffs state that "there are witnesses with written documents to establish Count II." (Id. at ¶ 10.) If plaintiffs asked Aetna in writing for information that ERISA requires plan administrators to provide, and Aetna failed or refused to provide that information, they should allege that clearly in their complaint.

**D. Plaintiffs' Estoppel Claim (Count III)**

Plaintiffs argue that Aetna "should be estopped from refusing to recognize and comply with the Patient's assignments of benefits to ASAP under the Plan." (Compl. ¶ 50.) In the ERISA context, estoppel has four elements: "(1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to her detriment." Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (7th Cir. 1999). The thrust of the ASAP's estoppel claim is that Aetna is refusing to pay ASAP as Ingram's assignee, contrary to the statement of Aetna's representative that "ASAP will be paid under the Plan 20% of the cost with Medicare paying 80% of the cost." (Compl. ¶¶ 18, 50.) ASAP does not allege that Aetna's agent made this representation in writing. Cf. Coker, 165 F.3d at 585; Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 856 (7th Cir. 1997) ("[I]f

the written terms of an ERISA plan do not entitle the claimant to the coverage sought, benefits will not be forthcoming on the basis of oral representations to the contrary."). Plaintiffs attempt to distinguish these authorities by insisting that Aetna's agent accurately represented that the Plan covers 20% of eligible expenses. (Pls.' Resp. at ¶ 13.) If that is so, then there has not been a "knowing misrepresentation" and Count III does not add anything to plaintiffs' § 1132(a)(1)(B) claim. If ASAP is not entitled to payment under the Plan, and Aetna's agent orally represented otherwise, then estoppel does not apply unless the Plan is ambiguous (and plaintiffs have not alleged that it is). Cf. Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 588-90 (7th Cir. 2001) (equitable estoppel may apply to oral misrepresentations if the plan is ambiguous). Plaintiffs must clarify the substance of the alleged misrepresentation and whether it was made in writing.

**E.     Compensatory Damages and Plaintiffs' Jury Demand**

Aetna asks us to strike ASAP's prayer for "compensatory damages for lost profits due to [ASAP] being deprived of the business use of [the unpaid benefits]" and "punitive damages for [Aetna's] malicious and reckless indifference to Plaintiff's rights." (Compl. ¶¶ 39B-C (Count I), 51B-C (Count III).) "Extracontractual" damages — i.e., relief beyond the "benefits due [to the participant or beneficiary] under the terms of his plan" — are not available under § 1132(a)(1)(B). See Harsch v. Eisenberg, 956 F.2d 651, 655, 660-61 (7th Cir. 1992) (concluding

that both compensatory and punitive damages are unavailable under § 1132(a)(1)(B)). Plaintiffs' response to Aetna's argument is ambiguous: "Plaintiffs are not seeking [extracontractual] damages as compensation under ERISA." (Pls.' Resp. at ¶ 17.) Aetna interprets this statement to mean that plaintiffs are abandoning their claims for "lost profits" and punitive damages. (Def.'s Reply at 7.) We are not so sure. If plaintiffs are instead suggesting that they may recover "extracontractual" damages if they prevail on their estoppel claim, they have not cited any authority to support their position. Aetna's motion to strike plaintiffs' prayer for compensatory and punitive damages is granted.

In its opening brief Aetna also argues that we should strike plaintiffs' jury demand. See McDougall v. Pioneer Ranch Ltd. Partnership, 494 F.3d 571, 576 (7th Cir. 2007) ("The general rule in ERISA cases is that there is no right to a jury trial because ERISA's antecedents are equitable, not legal."). In its reply memorandum, Aetna appears to agree with plaintiffs that they are entitled to a jury trial on their estoppel claim. (Def.'s Reply at 7.) We can decide this question at a later date.

## **CONCLUSION**

Aetna's motion to dismiss (14) is granted in part and denied in part. The motion is denied as to Count I, and granted as to Counts II and III. Plaintiffs' prayer for "extracontractual" compensatory and punitive damages is stricken. We will reserve ruling on whether plaintiffs are entitled to a jury trial. Counts

II and III are dismissed without prejudice.  Plaintiffs are given leave to file an amended complaint by June 22, 2011 that cures the deficiencies we have identified, if they can do so.  If plaintiffs choose not to file an amended complaint by that date, we will dismiss Counts II and III with prejudice.  A status hearing is set for June 29, 2011 at 11:00 a.m.

DATE:     June 9, 2011

ENTER:    _____
          John F. Grady, United States District Judge