# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AMERICAN SERV. & PRODUCT, INC., and WARREN INGRAM, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 10 C 7055 ) |
| AETNA HEALTH INS. CO. | ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**

Before the court is defendant Aetna Health Insurance Company's ("Aetna") motion for summary judgment. We grant Aetna's motion for the reasons explained below.

## **BACKGROUND**

Plaintiffs American Service Product, Inc. ("ASAP") and Warren Ingram have sued Aetna under ERISA for wrongful denial of benefits. See 29 U.S.C. § 1132(a)(1)(B). Ingram was a beneficiary under a self-funded employee welfare benefits plan (the "Plan") provided by his employer, Air Tran Airways ("Air Tran"). (Def.'s L.R. 56.1(a)(3) Stmt. in Supp. of its Mot. for Summ. J. (hereinafter, "Def.'s Stmt.") ¶¶ 2-3, 9; see also Plan Booklet, attached as Tab 1 to Def.'s Stmt.)[1] Air Tran sponsored the Plan and served as the

---

[1]  The plaintiffs admit that Ingram was an Air Tran employee "at all relevant times," (see Pls.' Resp. to Def.'s Stmt. ¶ 2), but then confusingly assert in their response brief that he was covered as the spouse of a former Air

"Plan Administrator." (Def.'s Stmt. ¶¶ 8, 10.) Aetna acted as the "Claims Administrator" pursuant to an Administrative Services Agreement with Air Tran. (Id. at ¶ 11; see also Administrative Services Agreement, attached as Tab 3 to Def.'s Stmt.) Ingram is a hemophiliac and treats his hemophilia with a self-injectable prescription medication called Kogenate Factor VIII ("Kogenate"). (Def.'s Stmt. ¶ 3.) Effective January 1, 2005, the Plan Booklet was amended to require beneficiaries to obtain refills of certain self-injectable drugs from particular pharmacies:

> No benefits are payable under this section:
>
> For any refill of a designated self-injectable drug not dispensed by or obtained through the specialty pharmacy network. An updated copy of the list of self-injectable drugs designated by this Plan to be refilled by or obtained through the specialty pharmacy network is available upon request or may be accessed at the Aetna website at www.aetna.com. The list is subject to change by Aetna.

(Amendment to Plan of Benefits, dated Jan. 1, 2005, attached as Tab 4 to Def.'s Stmt.) On December 17, 2004, Aetna sent Ingram a letter that described the amendment and attached the list of self-injectable drugs — including Kogenate — that had to be obtained from a member of Aetna's "specialty pharmacy network" ("SPN"). (Def.'s Stmt. ¶¶ 17-19; see also "Coverage Change Effective January 1, 2005 for Self-Injectable Medications" (hereinafter "Coverage

---

Tran employee who had elected Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage. (See Pls.' Resp. at 3, 9.) However, our reasoning infra is the same whether Ingram was covered as a current employee or as the spouse of a former employee who had elected COBRA coverage.

Change Letter"), dated Dec. 17, 2004, attached as Tab 5 to Def.'s Stmt.) Ingram received this letter before January 1, 2005, the amendment's effective date. (See Def.'s Stmt. ¶ 18; see also Def.'s Req. to Admit to Ingram, attached as Tab 6 to Def.'s Stmt., at Reqs. 1 & 2; Def.'s Req. to Admit to ASAP, attached as Tab 7 to Def.'s Stmt., at Reqs. 1 & 2; Pls.' Joint Resp. to Def.'s Reqs. to Admit, attached as Tab 8 to Def.'s Stmt. (admitting all of Aetna's requests to admit).)

On March 21, 2005, Ingram faxed a letter to an Aetna representative named Donald Amorosi with questions about his prescription-drug coverage. (Def.'s Stmt. ¶ 26.) Among other things, Ingram asked whether he had "out of network" coverage and, if so, whether that meant that he could obtain prescriptions from the phramacy of his choice. (Id.; see also Letter from W. Ingram to D. Amorosi, dated Mar. 21, 2005, attached as Tab 9 to Def.'s Stmt.) On March 25, 2005, Ingram had a telepone conversation with Amorosi. (Def.'s Stmt. ¶ 27.) Ingram contends — and Aetna does not dispute for purposes of its current motion — that Amorosi told Ingram that the Plan covered Kogenate obtained from the pharmacy of his choice. (Id.) On April 1, 2005, April 7, 2005, and April 13, 2005, Ingram obtained Kogenate from plaitniff ASAP, a pharmacy that was not a member of Aetna's SPN. (Id. at ¶¶ 28-29.) On April 13, 2005, Aetna responded in writing to Ingram's March 21, 2005 letter and informed him that he was not entitled to coverage unless he

obtained Kogenate from an SPN member. (Id. at ¶¶ 31-32.) It later denied Ingram's benefits claim for the three Kogenate refills on that basis. (Id. at ¶¶ 36-38.)

Approximately four years later, in March 2009, ASAP submitted an invoice to Aetna seeking reimbursement for the Kogenate it had provided to Ingram in April 2005. (Id. at ¶ 39.) By that time, Medicare had paid 80% of the cost of the medication as Ingram's primary insurer. (Id. at ¶ 40.) On May 20, 2009, Aetna rejected ASAP's claim for the remaining 20% for the same reason it denied Ingram's claim in 2005: ASAP was not an SPN member as the amended Plan required. (Id. at ¶ 42.)

## DISCUSSION

In their original complaint, the plaintiffs asserted a claim for estoppel based upon Ingram's communications with Amorosi.[2] We dismissed that claim because: (1) the plaintiffs' allegations about the substance of the conversation were unclear; and (2) they had not alleged that Amorosi made his alleged statements in writing, a necessary element of an ERISA estoppel claim. See American Serv. & Product, Inc. v. Aetna Health Ins. Co., No. 10 C 7055, 2011 WL 2415172, *3 (N.D. Ill. June 9, 2011); see also Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (7th Cir. 1999) (In the ERISA

---

[2] The plaintiffs also brought an ERISA claim for failure to provide requested plan documents. See 29 U.S.C. §§ 1024(b)(4) & 1132(c)(1). We ultimately dismissed that claim with prejudice because it was apparent after two attempts that the plaintiffs could not allege that they had submitted written requests for plan information. (See Order, dated October, 19 2011, Dkt. 36.)

context, estoppel has four elements: "(1) a knowing misrepresentation; (2) <u>made in writing</u>; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to her detriment.") (emphasis added); Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 856 (7th Cir. 1997) ("[I]f the written terms of an ERISA plan do not entitle the claimant to the coverage sought, benefits will not be forthcoming on the basis of oral representations to the contrary."). We gave the plaintiffs leave to amend their estoppel claim, see American Serv. & Prod., 2011 WL 2415172, *3, but they instead chose to abandon it. (See Second Am. Compl.)[3]

So, only the plaintiffs' claim for wrongful denial of benefits remains. Aetna argues that it is entitled to summary judgment on that claim because: (1) it is not a proper defendant to a claim for wrongful denial of benefits; and (2) it correctly interpreted and applied the Plan's terms to deny benefits.

**A. Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom

---

[3]/ For good measure, the plaintiffs now admit that Aetna never stated in writing that the Kogenate that Ingram received from ASAP was covered. (See Pls.' Resp. to Def.'s Stmt. ¶¶ 34-35.)

in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

Neither party has discussed the appropriate standard for reviewing Aetna's determination that the Plan did not cover Ingram's Kogenate refills. A decision denying benefits is ordinarily reviewed *de novo*, unless the plan gives the administrator discretion to decide claims and/or to interpret the plan. See Ruiz v. Continental Cas. Co., 400 F.3d 986, 989 (7th Cir. 2005). In such cases, we will not reverse the administrator's decision unless it was arbitrary and capricious. See id. Because Aetna has not directed our attention to any Plan provision granting it discretionary authority, we will review its decsion to deny benefits *de novo*.

**B.     Proper Defendant**

ERISA § 1132(d)(2) provides that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable <u>only against the plan as an entity</u> and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."  29 U.S.C. § 1132(d)(2).  Our Court of Appeals has interpreted this provision to require plaintiffs to sue their benefits plan for wrongful denial of benefits.  See <u>Neuma, Inc. v. AMP, Inc.</u>, 259 F.3d 864, 872 n.4 (7th Cir. 2001) ("We continually have noted that ERISA permits suits to recover benefits only against the Plan as an entity.") (internal quotation marks omitted) (citing <u>Jass v. Prudential Health Care Plan, Inc.</u>, 88 F.3d 1482, 1490 (7th Cir. 1996)); <u>see also</u> <u>Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan</u>, 378 F.3d 669, 674 (7th Cir. 2004); <u>Mote v. Aetna Life Ins. Co.</u>, 502 F.3d 601, 610-11 (7th Cir. 2007).  But the Court has recognized an exception to this requirement:  "when the lines between the plan, the plan administrator, and the plan sponsor are indistinct or contested, the plaintiff's designation of the 'wrong' defendant can be forgiven provided the 'right' defendant is not misled."  <u>Feinberg v. RM Acquisition, LLC</u>, 629 F.3d 671, 673 (7th Cir. 2011); <u>see also</u> <u>Neuma</u>, 259 F.3d at 872 n.4 (declining to rule that the plaintiff had sued the wrong party because the record was unclear and the

defendant had not moved for summary judgment on that basis); Mein v. Carus Corp., 241 F.3d 581, 584-85 (7th Cir. 2001) (declining to dismiss a claim against an employer that was "closely intertwined" with the plan); Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (7th Cir. 1997) (declining to a dismiss claim against an employer because (1) plan documents referred to the employer and the plan interchangably; and (2) the employer did not move for summary judgment on the basis that the plaintiff had sued the wrong party).

Without citing the relevant standard, plaintiffs argue that Aetna is a proper party because it made the decision to deny benefits. (See Pls.' Mem. at 6.) But the rule contemplates that different parties may play different roles without the plaintiff being excused from suing the plan. See Mote, 502 F.3d at 611 (holding that Aetna was properly dismissed even though it had discretion, as the plan administrator, to determine benefits); see also Tatera v. Prudential Ins. Co. of America, No. 11 C 2667, 2011 WL 3876954, *2 (N.D. Ill. Sept. 1, 2011) ("[T]he fact that Prudential was responsible for the denial of benefits is not enough to make it a proper defendant under Seventh Circuit precedent."); Zuckerman v. United of Omaha Life Ins. Co., No. 09-CV-4819, 2010 WL 2927694, *2-3 (N.D. Ill. July 20, 2010) (similar); Williams v. Aetna Life Ins. Co., No. 04 C 6228, 2006 WL 2794969, *4 (N.D. Ill. Sept. 28, 2006) (dismissing Aetna where the Plan clearly distinguished between Aetna, as claims administrator, the employer,

and the plan); but see Ayotte v. Prudential Ins. Co. of Amer., No. 12 C 5341, 2012 WL 4580316, *2-7 (N.D. Ill. Oct. 1, 2012) (concluding that an insurer's control over benefits payments is a factor supporting a finding that the exception applies). The question is whether the distinction between the Plan and the party being sued is clear. See Mein, 241 F.3d at 585; Riordan, 128 F.3d at 551. Page 2 of the Plan Booklet states:

> The Plan described in the following pages of this Booklet is a benefit plan of the Employer. These benefits are not insured with [Aetna] but will be paid from the Employer's funds. Aetna will provide certain administrative services under the Plan as outlined in the Administrative Services Agreement between Aetna and the Customer.

(Plan Booklet at 2.) This language clearly distinguishes between Aetna and the Plan, and the plaintiffs have not attempted to demonstrate that other language in the Plan Booklet blurs the distinction. See Nelson v. Napolitano, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."). Therefore, this case more like Mote than Mein or Riordan. See Mote, 502 F.3d at 611 (affirming the district court's order dismissing Aetna, the plan administrator, because "the Plan's policy distinguishes between the Plan, the employer, and Aetna"). Under controlling Seventh Circuit authority, Aetna is an improper party to this lawsuit.

Our conclusion that the plaintiffs have sued the wrong party is dispositive, but we are reluctant to grant summary judgment on

that basis alone. Our Court of Appeals has hinted that it may revisit the rule requiring parties to sue their plan in light of recent Supreme Court authority. See Schultz v. Aviall, Inc. Long Term Disability Plan, 670 F.3d 834, 836 n.1 (7th Cir. 2012) (citing Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238 (2000)).[4] And the proper scope of the exception to that rule is unsettled. See Ayotte, 2012 WL 4580316, *2-7 (discussing the different approaches that judges in this district have adopted). So, we believe it is prudent to address Aetna's alternative argument for summary judgment.

**C. Whether the Plan Covered the Medication That Ingram Obtained from ASAP**

"In interpreting the language of an ERISA-governed plan, we apply the federal common law rules of contract interpretation . . . . Our first task is to determine whether the contract at issue is ambiguous or unambiguous." Central States, Southeast and Southwest Areas Pension Fund v. Waste Management of Michigan, Inc., 674 F.3d 630, 634 (7th Cir. 2012) (citation omitted). The plaintiffs half-heartedly suggest that the Plan is ambiguous, but

---

[4] Harris held that § 1132(a)(3) — authorizing private actions for equitable relief — did not limit the universe of potential defendants to such a claim. See Harris, 530 U.S. at 246-47. The Ninth Circuit Court of Appeals has extended Harris's reasoning to suits for wrongful denial of benefits under § 1132(a)(1)(B). See Cyr v. Reliance Standard Life Ins. Co., 642 F.3d 1202, 1206 (9th Cir. 2011). In Schultz, our Court of Appeals acknowledged the tension between Cyr and its own line of cases requiring beneficiaries to sue the plan as an entity, but declined to resolve it on the facts of that case. See Schultz, 670 F.3d at 836 n.1 ("In light of our holding on the merits, we reserve this second question for another case where the answer may make a difference in the outcome.").

they have not identified any purported ambiguity.  (See Pls.' Mem. at 11.)  They merely disagree with Aetna about what the Plan means. See Green v. UPS Health and Welfare Package for Retired Employees, 595 F.3d 734, 738 (7th Cir. 2010) ("[T]he fact that parties to a contract disagree about its meaning does not show that it is ambiguous, for if it did, then putting contracts into writing would provide parties with little or no protection.") (citation and internal quotation marks omitted).  The amendment to the Plan clearly and unambiguously required Ingram to obtain Kogenate from a member of Aetna's SPN.  (See Amendment to Plan of Benefits at AetASAP00080; see also Coverage Change Letter at AetASAP0450.)  The plaintiffs admit that ASAP was not an SPN member in April 2005, when it filled the disputed prescriptions.  (See Pls.' Resp. to Def.'s Stmt. ¶ 28.)  They argue, however, that the "Effect of Medicare" section of the Plan Booklet entitles Ingram to coverage. The Plan Booklet states that the Plan is the "Primary Payor" when the beneficiary is covered as a current employee of Air Tran and is eligible for Medicare coverage for one of three specified reasons. (See Plan Booklet at 35-36.)  It then goes on to state that,

> Otherwise, This Plan will cover the benefits as the Secondary payor.  This Plan will pay the difference between the benefits of this Plan and the benefits that Medicare pays, up to 100% of "Plan Expenses."  "Plan Expenses" means any necessary and reasonable health expenses, part or all of which is covered under this Plan.

(Id. at 36.) The plaintiffs argue that this provision means that the Plan covers all health expenses, whether or not coverage is available under the Plan's other provisions, so long as Medicare is the primary payor. (Pls.' Resp. at 8.) We cannot square this interpretation with the definition of "Plan Expenses," which is defined as expenses "covered" under the Plan. By its plain terms, the Plan — as amended effective January 1, 2005 — did not cover Kogenate purchased from a pharmacy (like ASAP) that was not a member of Aetna's SPN. The plaintiffs insist that another section of the Plan Booklet entitled "Coordination of Benefits — Other Plans Not Including Medicare" somehow supports their position. (See Pls.' Resp. at 8.) As the title suggests, this section of the Booklet describes the relationship betweeen the Plan and other benefits plans under which the beneficiary may be covered, besides Medicare. It has nothing to do with the scope of coverage under the Plan, which is described in a separate section. (See Plan Booklet at 3 ("Health Expense Coverage").) It was this section that was amended to limit coverage for Kogenate and other self-injectable drugs. (See id. at 4-6; Amendment to Plan of Benefits at AetASAP00080 ("The below Self-Injectable Drug language has been added to your Booklet under the Prescription Drug Expense Coverage section and your Prescription Drug Limitations section as follows . . . .").)

Finally, the plaintiffs rely on portions of a Medicare manual entitled "Medicare and Other Health Benefits: Your Guide to Who Pays First" (hereinafter, "Who Pays First"). (<u>See</u> Who Pays First, attached as Ex. I to Pls.' Resp.) This informational "government booklet" neither creates nor purports to create coverage that does not otherwise exist under the Plan.[5] It merely explains in general terms the extent of Medicare coverage when the beneficiary also has coverage from another source. (<u>See</u> Who Pays First at 1-3, 22-23.) In sum, applying the Plan's plain meaning, Ingram's Kogenate refills from ASAP in April 2005 were not covered. Therefore, Aetna's decision to deny benefits was correct.

## **CONCLUSION**

Aetna's motion for summary judgment [45] is granted.

DATE:     January 17, 2013

ENTER:    _____
          John F. Grady, United States District Judge

---

[5]/ The Medicare Secondary Payer Act is irrelevant for the same reason. (<u>See</u> Pls.' Resp. at 9); <u>see also</u> 42 U.S.C. § 1395y(b) (establishing rules governing Medicare payments when the individual has coverage under another plan). If an individual's private plan does not cover the expense at issue, then there are no benefits to coordinate.